UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ABISAI RODRIGUEZ,<br>   Plaintiff, | : : : : | CASE NO. 3:22-cv-763 (MPS) |
| v. | : : | |
| JOHN DOE, et al.,<br>   Defendants. | : : : | JANUARY 13, 2023 |

## ORDER

Plaintiff Abisai Rodriguez, incarcerated at Brooklyn Correctional Institution in Brooklyn, Connecticut, filed this case under 42 U.S.C. § 1983. The plaintiff initially named eight defendants identified only as John or Jane Doe. On July 25, 2022, the Court ordered the plaintiff to file an amended complaint containing the name and current work address of at least one defendant. See ECF No. 10. On January 4, 2023, the plaintiff filed an Amended Complaint naming as defendants James Watson and seven unknown individuals. See ECF No. 17. The plaintiff contends that the defendants were deliberately indifferent to his serious medical need in violation of his Eighth Amendment rights. The plaintiff seeks damages as well as declaratory and injunctive relief.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner

pays the filing fee. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Here, the plaintiff is proceeding *in forma pauperis*.

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

"Although courts must interpret a pro se complaint liberally, the complaint will be dismissed unless it includes sufficient factual allegations to meet the standard of facial plausibility." *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

I. <u>Allegations</u>

The plaintiff was incarcerated at Cheshire Correctional Institution ("Cheshire") at all times relevant to this action. ECF No. 17 ¶ 12. On June 30, 2019, at about 11:00 a.m., the plaintiff noticed a slightly painful skin growth on his left leg, about 10 mm in diameter. *Id.* ¶ 13. The plaintiff thought it was an ingrown hair and submitted a medical request on his way to lunch. *Id.* Within a few hours, the growth was the size of a half dollar. *Id.* ¶ 14.

The next morning, the plaintiff showed the growth to the Officer Doe #1 on first shift and asked him to call the medical unit because the growth was unnatural, and his condition was an

emergency. *Id.* ¶ 15. Officer Doe #1 told the plaintiff there was nothing he could do and advised him to write to the medical unit. *Id.* The plaintiff submitted a second inmate request and labeled it "emergency." *Id.* ¶ 16. He reported that the growth had tripled in size and was growing "abnormally fast." *Id.* The plaintiff did not receive a response. *Id.*

By the evening of July 1, 2019, the growth was reddish in color and discharging fluid from the center. *Id.* ¶ 17. It was extremely painful and sensitive to touch. *Id.* At evening recreation, the plaintiff showed the growth to Officer John Doe #2, explained how the condition had worsened during the day, and asked him to call the medical unit. *Id.* ¶ 18. Officer Doe #2 advised the plaintiff to write to the medical unit and said there was nothing he could do. *Id.*

Over the period from July 2, 2019 to July 4, 2019, the plaintiff requested medical attention from various correctional staff. *Id.* ¶ 19. On July 2, 2019, he showed his leg to Lieutenant John Doe #3 and Captain Watson. *Id.* Captain Watson observed liquid oozing from the plaintiff's leg but only told him to write to the medical unit. *Id.* The plaintiff continued to submit medical requests with no response. *Id.*

On July 3 or 4, 2019, the plaintiff was transferred from East Block 2 to North Block 3. *Id.* ¶ 20. Upon arriving in North Block #3, the plaintiff asked Officer John Doe #4 to call the medical unit. *Id.* Officer Doe #4 commented that the plaintiff had only just arrived and was already complaining and told him to write to the medical unit. *Id.* The plaintiff showed the first and second shift officers, including Officer Doe #5 the sore which was now 3" in diameter and oozing liquid. *Id.* ¶ 21. Although he told them that it was painful and an emergency, they told him to write to the medical unit. *Id.*

During morning recreation on July 5, 2019, Officer John Doe X saw the plaintiff's leg

3

and called the medical unit, speaking to Doe #7. *Id.* ¶¶ 22-23. Doe #7 did not immediately call the plaintiff to the medical unit. *Id.* ¶ 23. The plaintiff was seen by medical staff that evening. *Id.* ¶ 24. His wound was measured at 9 cm x 5 cm. *Id.* The medical provider gave the plaintiff Bactrim which made him nauseous and provided no relief. *Id.*

On July 8, 2019, APRN Broadley evaluated the plaintiff's injury. *Id.* ¶ 25. The growth was now 14 cm x 14 cm and extended to his ankle. *Id.* APRN Broadley diagnosed cellulitis with abscess and sent the plaintiff to the hospital, where he was admitted for treatment. *Id.* ¶¶ 25-26.

On July 11, 2019, the plaintiff was diagnosed with MRSA and underwent surgery. *Id.* ¶ 27. The plaintiff was given several medications including Bactrim which again caused nausea and vomiting. *Id.* The following day, the plaintiff was discharged and returned to Cheshire. *Id.* ¶ 28. The plaintiff was provided follow-up treatment through August 1, 2019. *Id.* ¶¶ 29-30. Beginning October 29, 2019, the plaintiff was treated for two weeks for a potential MRSA infection in his right leg. *Id.* ¶¶ 31-32.

II.   Analysis

The plaintiff claims that the defendants were deliberately indifferent to his serious medical need. He alleges that defendants Doe #1-#5 were deliberately indifferent by failing to call the medical unit thereby delaying his treatment. He alleges that Nurse Doe #6 failed to respond to his many requests for medical treatment from June 30, 2019 through July 4, 2019, and Doe #7 failed to call him to the medical unit as soon as Officer Doe X contacted the medical unit. The plaintiff does not mention Captain Watson in his statement of legal claims. As the plaintiff alleges only that he showed his wound to Captain Watson on July 2, 2019, the Court

considers Captain Watson to be included in the first claim for failing to call for medical care.

The plaintiff does not indicate whether he was a sentenced prisoner or a pretrial detainee when the events underlying this action occurred. The Court may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); *Ligon v. Doherty*, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate locator information). The Court takes judicial notice of the Connecticut Department of Correction website which reports that the plaintiff was sentenced on February 15, 2019. Thus, in July 2019, the plaintiff was a sentenced inmate. *See* Connecticut Department of Correction, Inmate Information, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=369961 (last visited Jan. 9, 2023).

As a sentenced prisoner, the plaintiff's claims for deliberate indifference to medical needs are cognizable under the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (claims of sentenced prisoners are considered under the Eighth Amendment). To state a cognizable claim for deliberate indifference to serious medical needs, the plaintiff must allege facts showing that his medical need was "sufficiently serious." *See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162-63 (2d

5

Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects the individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Where the claim involves a delay in treatment, the court focuses on the effect of the delay, not the underlying injuries, when determining if there is a serious medical need under the objective component of the deliberate indifference test. *See Smith v. Carpenter*, 316, F.3d 178, 185-86 (2d Cir. 2003). A "delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Thomas v. Nassau Cnty. Corr. Ctr.*, 288 F. Supp. 2d 333, 339 (E.D.N.Y. 2003) (quoting *Chance*, 143 F.3d at 703).

The plaintiff also must show that the defendants were deliberately indifferent to his serious medical needs. "The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). The defendants must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions." *Darnell*, 849 F.3d at 35; *see also Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir.

6

2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate ham will result." (quotation marks omitted)). Thus, "mere negligence" is insufficient to state a claim for deliberate indifference. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

The plaintiff contracted MRSA, a fast-growing, serious infection. Although the delay in treatment was only five days, considering the rapid growth of the infection, the Court assumes for purposes of initial review, that the plaintiff's medical need was serious. *See Miller v. Ramineni*, No. 9:14-CV-1351(DNH/CFH), 2016 WL 1253684, at *4 (N.D.N.Y. Feb. 29, 2016) (citing cases finding MRSA a serious medical need), *report and recommendation adopted*, 2016 WL 1261125 (N.D.N.Y. Mar. 30, 2016).

Defendants Captain Watson and Does 1-5 are custody staff. Non-medical staff are deliberately indifference to serious medical needs when they intentionally deny or delay access to medical care. *See id*. at *5; *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (noting that prison guards may be deliberately indifference to medical need if they intentionally deny or delay access to medical care). The plaintiff alleges that he showed each defendant his leg and explained how fast the infection was growing. Each defendant refused to call the medical unit and directed the plaintiff to submit a written request. This allegation is sufficient to plausibly show an intentional delay in medical care. The deliberate indifference claims will proceed against defendants Watson and Does 1-5.

Defendants Does 6-7 are alleges to be nurses. Doe 6 failed to respond to the plaintiff's written requests for medical care, and Doe 7 did not immediately call the plaintiff to the medical

unit but made him wait until later in the day. Again, the nurses were informed that the infection was fast-growing, but did not provide immediate medical attention. The Court considers these claims sufficient to survive initial review.

III.     Conclusion

The deliberate indifference claim will proceed against Captain Watson. As noted in prior orders, Captain Watson was not identified as a defendant in this action within the limitations period. However, the Court defers any consideration of the timeliness of the identification until defendants properly assert defense. *See* ECF No. 10.

The Court enters the following additional orders.

(1)     **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain a current service address for defendant Watson, mail a waiver of service of process request packet containing the Amended Complaint and this Order to the defendant at that address within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If the defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2)     **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the amended complaint on defendant Watson in his official capacity at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3)     **The Clerk shall** send the plaintiff a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(10)  The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(11)  The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

(12)  The plaintiff is directed to ascertain the names and work addresses for the remaining defendants through discovery and file a notice once he obtains the information.

**SO ORDERED** this 13th day of January 2023 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge