UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ABISAI RODRIGUEZ,<br>Plaintiff, | : <br> : <br> : | CASE NO. 3:22-cv-763 (MPS) |
| v. | : <br> : | |
| JOHN DOE, et al.<br>Defendants. | : <br> : <br> : | MAY 2, 2023 |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

**I.   Introduction**

The plaintiff, Abisai Rodriguez, commenced this action against eight John Doe defendants by Complaint filed on June 10, 2022. On December 20, 2022, the plaintiff identified Captain Watson as one of the Doe defendants but did not submit a proper Amended Complaint setting forth his allegations and claims against him. On January 4, 2023, the plaintiff filed a proper Amended Complaint. The plaintiff contends that the defendants were deliberately indifferent to his serious skin disease.

The defendants have filed a motion to dismiss on the grounds that the claims are barred by the statute of limitations and the plaintiff failed to exhaust his administrative remedies, among other asserted flaws. The plaintiff filed a motion for extension of time to respond to the motion. The Court denied the motion without prejudice for failure to comply with court rules. Although the plaintiff was invited to refile a motion that complied with court rules, he has not done so. Neither has he responded to the motion to dismiss. For the following reasons, the motion to

dismiss is granted.

## II.     Standard[1]

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction is proper where "the district court lacks statutory or constitutional power to adjudicate" the case. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The court may consider evidence outside the pleadings when deciding whether subject matter jurisdiction exists. *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief. *Id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting

---

[1] The defendants also move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5). As the Court need not reach this argument, it does not set forth the Rule 12(b)(5) standard.

*Twombly*, 550 U.S. at 555). However, when reviewing a motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor. *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012). And when a party is proceeding pro se, the court construes that party's submissions "liberally and interpret[s] them to raise the strongest arguments they suggest." *Wright v. C.I.R.*, 381 F.3d 41, 44 (2d Cir. 2004).

**III.    Facts**

The plaintiff alleges the following facts in his Amended Complaint.

The plaintiff was housed at Cheshire Correctional Institution at all times relevant to this action. Am. Compl., ECF No. 17, ¶ 12. On Sunday morning, June 30, 2019, the plaintiff noticed a "slightly painful skin growth about 10mm in diameter" on his left leg. *Id.* ¶ 13. The plaintiff thought the growth was an ingrown hair and submitted an inmate request form on his way to lunch. *Id.* Within a few hours, the growth was the size of a half dollar. *Id.* ¶ 14.

The next morning, the plaintiff stopped the first shift officer when he was touring the housing unit and asked him to call the medical unit for emergency treatment. *Id.* ¶ 15. The officer, defendant Doe #1, told the plaintiff to write to the medical unit. *Id.* Although the plaintiff stated that he had written and that the growth was "unnatural," the officer said there was nothing he could do. *Id.* On his way to dinner, the plaintiff submitted a second inmate request, which he labelled "emergency" and stated that the growth had tripled in size since the morning. *Id.* ¶ 16. Defendant Doe #6 did not respond to the request. *Id.*

By 6:00 p.m., on July 1, 2019, the growth had become reddish in color and was discharging fluid from the center. *Id.* ¶ 17. The growth was very painful and sensitive to touch. *Id.* During evening recreation, the plaintiff showed the growth to the second shift officer,

defendant Doe #2, and asked him to call the medical unit. *Id.* ¶ 18. The officer observed the fluid discharge, but just told the plaintiff to write to the medical unit and said there was nothing he could do. *Id.*

Over the next three days, July 2-4, 2019, the plaintiff repeated his request for medical attention to correctional officers, lieutenants, and medical staff when they toured the housing unit. *Id.* ¶ 19. On July 2, 2019, the plaintiff showed Captain Watson his leg. *Id.* Like all the others, Captain Watson told the plaintiff to write to the medical unit and walked away. *Id.* The plaintiff submitted an emergency request to the medical unit, on form CN 9601, but received no answer. *Id.*

On July 3 or 4, 2019, the plaintiff was moved from East Block #2 to North Block #3. *Id.* ¶ 20. Walking down the hallway was very painful. *Id.* Upon his arrival, the plaintiff asked officer Doe #4 to call the medical unit. *Id.* Officer Doe #4 commented that the plaintiff had just arrived and was already complaining. *Id.* Officer Doe #4 told the plaintiff to write to the medical unit and to be patient. *Id.*

The plaintiff showed the growth, now about 3" in diameter, to the first and second shift officers. *Id.* ¶ 21. Although he said that the growth was painful and an emergency, they told him to write to the medical unit. *Id.*

On Friday, July 5, 2019, Officer Doe X saw the plaintiff's leg and called the medical unit. *Id.* ¶¶ 22-23. Medical staff member Doe #7 waited until that evening to call him to the medical unit. *Id.* ¶¶ 23-24. Medical staff administered Bactrim which caused the plaintiff to experience stomach pain and nausea. *Id.* ¶ 24.

4

On July 8, 2019, APRN Broadly evaluated the growth, which had increased to 14 cm x 14 cm and extended to his ankle. *Id.* ¶ 25. She diagnosed cellulitis with abscess and ordered the plaintiff taken to the hospital immediately. *Id.* The plaintiff was admitted to the hospital for treatment. *Id.* ¶ 26. On July 11, 2019, the plaintiff was diagnosed with MRSA, methicillin resistant staph aureus, and underwent surgery. *Id.* ¶ 27.

On July 12, 2019, the plaintiff was discharged from the hospital and returned to Cheshire Correctional Institution where he continued to undergo treatment through August 1, 2019. *Id.* ¶¶ 28-30. On October 29, 2019, the plaintiff began treatment for two weeks because MRSA may have spread to his right leg. *Id.* ¶¶ 31-32.

IV. **Discussion**

Following initial review, the Court determined that the claim for deliberate indifference to medical needs would proceed against Captain Watson. Although the Court noted that the plaintiff did not identify Captain Watson as a defendant until the limitations period had expired, it deferred consideration of the timeliness of the claim until such time as the defendants raised this defense. The plaintiff also was ordered to ascertain the identities of the remaining defendants. The defendants now move to dismiss the complaint for lack of jurisdiction, insufficient service of process, and failure to state a claim upon which relief may be granted. The defendants have also filed the requisite "notice to self-represented litigant," providing instructions to the plaintiff as to how to respond to the motion and warning him that his claims may be dismissed if he does not respond. ECF No. 29.

A. **Subject Matter Jurisdiction**

The plaintiff seeks damages from the defendants in both their individual and official

capacities. The Eleventh Amendment divests the district court of subject matter jurisdiction over claims for money damages against state officials acting in their official capacities unless the state has waived that immunity or Congress has abrogated it. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Section 1983 does not abrogate state sovereign immunity, *see Quern v. Jordan*, 440 U.S. 332, 343 (1979), and the plaintiff alleges no facts suggesting this immunity has been waived. Accordingly, the defendants' motion to dismiss is granted as to all claims for damages against the defendants in their official capacities.

### B.  Statute of Limitations

The limitations period to file a section 1983 action in Connecticut is three years. *See Thompson v. Rovella*, 734 F. App'x 787, 788-89 (2d Cir. 2018). The events underlying the allegations against Captain Watson and Does 1-3, and 5-7 occurred between June 30, 2019 and July 5, 2019. Thus, the plaintiff had until, at the latest, July 5, 2022 to file this action. The plaintiff's Complaint was received on June 10, 2022, within the limitations period. However, the plaintiff named only John Does as defendants.

"John Doe pleadings cannot be used to circumvent statutes of limitations because replacing a John Doe with a named party in effect constitutes a change in the party sued." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (internal quotation marks omitted). Further, the Second Circuit has held that "the lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity'" that would support relation back of an amended complaint under Federal Rule of Civil Procedure 15. *Id.* at 518 (citation omitted); *see also Abreu v. City of New York*, 657 F. Supp. 2d 357, 363 (E.D.N.Y. 2009) ("[A] plaintiff who believe[s] that there exist[s] individual defendants who [are] potentially liable for his injuries, but [who does] not

6

know their exact identities and who waits until after the expiration of the limitations period to remedy this lack of knowledge (by naming a specific individual as a defendant), will find his claim time-barred.") (internal quotation marks and citation omitted).  However, another judge within this district has recognized an exception where the inability to timely identify a Doe defendant was caused by defendants' actions.  *See Archibald v. City of Hartford*, 274 F.R.D. 371, 372 (D. Conn. 2011) (permitting replacement of John Doe defendants after limitations period had expired where plaintiff's failure to timely do so was caused by defendants' failure to respond to discovery requests) (citation omitted).

By Order filed July 25, 2022, the Court informed the plaintiff that his claims could be time-barred.  *See* ECF No. 10 at 2-3.  The plaintiff did not identify Captain Watson as a defendant until December 2022, after the limitations period expired and still has not identified any of the other Doe defendants.  Although the Court informed the plaintiff of the exception permitting replacement of a John Doe defendant after the limitations period expired, the plaintiff has provided no information regarding any efforts he made to learn the identities of the Doe defendants and has not responded to the timeliness argument asserted in the motion to dismiss.  Thus, absent any indication that the defendants impeded the plaintiff's attempt to ascertain the identities Captain Watson and the other Doe defendants, the claims are time-barred.

Defendants' motion to dismiss is granted on the ground that the plaintiff failed to identify Captain Watson as a defendant or provide the names of any other Doe defendants within the limitations period.[2]

---

[2] Although the statute of limitations is an affirmative defense, it may be the basis for a dismissal under Rule 12(b)(6) where all the facts necessary for determination of the defense are set forth in the complaint.  Because the complaint

7

V.     **Conclusion**

The defendants' motion to dismiss [**ECF No. 27**] is **GRANTED**.  The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 2nd day of May 2023 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge

---

here includes the dates during which Captain Watson and the other defendants allegedly brushed off the plaintiff's concerns about his leg, consideration of the statute of limitations on the basis of the facts set forth in the complaint is proper.  Further, this case is not one in which the Court need permit the plaintiff an opportunity to amend to plead facts that might support application of the continuing violation doctrine, which the Second Circuit has applied to Eighth Amendment claims of deliberate indifference to medical needs.  *See Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009).  The facts alleged in the complaint make clear that the alleged deliberate indifference – of Captain Watson and the Doe defendants – was confined to the period June 30, 2019 through July 11, 2019, the date the plaintiff underwent surgery after being admitted to the hospital.  So even if the acts attributed in the complaint to different defendants during this period could be described as "an ongoing policy" or a "series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs," *id.* at 181-82, that would not help the plaintiff, because the "continuing violation" would have ended by July 11, 2019, which is still well over three years before the plaintiff filed a pleading identifying Captain Watson as a defendant.

8